UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

JOHN JORDAN, )
    Plaintiff, )
)    Civil Action No. 1:11-cv-00045
v. )    Judge Wiseman/Brown
)
MICHAEL ASTRUE, )
Commissioner of Social Security, )
    Defendant. )

To:    The Honorable Thomas Wiseman, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits (DIB), as provided under Title II of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge are Plaintiff's Motion for Judgment on the Record and Defendant's Response. (Docket Entries 14, 15, 16). The Magistrate Judge has also reviewed the administrative record ("Tr."). (Docket Entry 12). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **DENIED**.

## I. INTRODUCTION

Plaintiff filed his application for DIB on January 7, 2008, alleging an onset date of July 1, 2007. (Tr. 17, 119-33). His claim was denied initially and on reconsideration. (Tr. 58-61, 65-66). He requested a hearing, which was held on April 23, 2010 before Administrative Law Judge ("ALJ") Gregory J. Froehlich. (Tr. 33-52). The ALJ denied Plaintiff's claim in a decision dated May 12, 2010. (Tr. 19-27).

In his decision denying Plaintiff's claims, the ALJ made the following findings of fact

1

and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.
2. The claimant has not engaged in substantial gainful activity since June 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
3. The claimant has the following severe impairments: degenerative disc disease; hypertension; and residuals status post inguinal hernia repair (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he requires a sit/stand option every 30 minutes. The claimant can perform no climbing and only occasional balancing, stooping, crouching, and crawling and is precluded from concentrated exposure to vibrations, moving mechanical parts, or unprotected heights. The claimant is limited to simple, repetitive, non-detailed tasks where co-worker and public contact is casual and infrequent, supervision is direct and non-confrontational, and changes in the workplace are infrequent and gradually introduced.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
7. The claimant was born on April 7, 1962 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-24).

The Appeals Council denied Plaintiff's request for review on April 19, 2011. (Tr. 5-7).

This action was timely filed on June 14, 2011. (Docket Entry 1).

## II. REVIEW OF THE RECORD

Plaintiff had a left inguinal hernia repair at Maury Regional Hospital on June 30, 2007. (Tr. 220). He did not show up for his post-operative appointment on July 5, 2007. (Tr. 223). On January 6, 2008, he returned to Maury Regional Hospital complaining of pain in his left hip radiating down his left leg for two weeks. He was diagnosed with left sciatica, cocaine abuse, and hypertension. (Tr. 226-39).

On January 7, 2008, DDS Interviewer D. Madison noted the following:

> By looking at Mr. Jordan, you cannot tell there is anything wrong with him. He doesn't walk like he is in pain or having difficulty. He did not lower himself into a sitting position as if he were having problems.

(Tr. 143). On a pain questionnaire completed around the same time, Plaintiff noted his pain began on July 1, 2007, and it begins in his stomach and spreads to his leg. (Tr. 164-68). His pain is caused by weather or standing, and he was not taking medication for it at the time. *Id*.

James N. Moore, M.D., completed a medical consultant analysis dated May 19, 2008. (Tr. 240-43). He concluded Plaintiff's impairments were not severe singly or in combination. *Id*.

Plaintiff sought treatment for hypertension and left leg pain at the Hope Clinic on May 20, 2008. (Tr. 246).

Plaintiff was in jail in Maury County from August 18, 2008 through January 15, 2009. (Tr. 67).

Anita L. Johnson, M.D., completed a medical consultant analysis dated September 10, 2008. (Tr. 247-50). She contacted Plaintiff by telephone to investigate his allegation of blurred vision. She noted Plaintiff told her his doctor believed it was a side effect of his blood pressure

medicine. Plaintiff reported he could watch television without difficulty. (Tr. 250). Dr. Johnson believed further development of the record was needed, but the additional impairments alleged since Dr. Moore's analysis were nonsevere singly or combined. *Id*.

On November 5, 2008, Plaintiff sought care in the emergency room at Maury Regional Hospital, complaining of chest pain. (Tr. 252-54). The emergency room physician referred him to his primary care physician. *Id*.

Plaintiff visited Primary Health Clinic in Columbia beginning on November 20, 2008, complaining of weeks of pain to his upper chest. (Tr. 262). On December 19, 2008, his physician noted Plaintiff's hypertension was poorly controlled. (Tr. 261). Plaintiff had a follow-up for his chest pain and hypertension on January 6, 2009. (Tr. 260). On January 19, 2009, Plaintiff obtained medication refills for hypertension and anxiety and complained of chronic chestwall pain. (Tr. 259). His doctor encouraged him to follow up at the health department. *Id*.

On February 4, 2010, Plaintiff again visited the Hope Clinic. He obtained medication refills for pain and hypertension. (Tr. 267).

Plaintiff completed the eighth grade. (Tr. 42). He stopped working due to hernia surgery. (Tr. 43).

At the hearing, Plaintiff testified that he had back surgery. (Tr. 32). He has back pain, and his legs go numb on one side. *Id* He also has bad cramps while sleeping. (Tr. 32-33). He has problems sleeping due to the leg cramps and pain. (Tr. 39). When he has pain, he rates it at a ten. (Tr. 33). His legs give out, and he is unable to stand or lift. *Id*. Plaintiff can stand for 2-3 hours before the pain and numbness begin. (Tr. 34). He can also walk "a couple of blocks" before experiencing pain. *Id*. Plaintiff's back locks up when he sits. (Tr. 34).

4

He takes ibuprofen every day, up to twice per day, to control his pain. (Tr. 33-34). The ibuprofen numbs the pain a bit. (Tr. 34).

Plaintiff stated that lifting fifty to sixty pounds hurts in his stomach, where his hernia was repaired. (Tr. 35). Lifting repeatedly hurts, as well. (Tr. 36).

Plaintiff's hypertension causes blurry vision, dizziness, and headaches. (Tr. 36-37). He also has fluid retention around his hands, which occurs about once per month and lasts a couple of days. (Tr. 41-42).

Plaintiff noted he has suffered from depression for "a long time." (Tr. 40). He recently started getting treatment at the Hope Clinic. *Id*. He has been on anti-depressants for about one year. *Id*. His symptoms have remained about the same. *Id*.

On a typical day, Plaintiff takes his medicine, feeds his dog, and takes out the trash, but he mostly sits. (Tr. 38). He also walks around outside and goes to the park. (Tr. 38).

Vocational Examiner ("VE") Joanne Bullard testified that Plaintiff has past work as a construction worker, which was very heavy and unskilled, and as a material handler, which was heavy and semi-skilled. (Tr. 43-44). The ALJ asked the VE if a hypothetical individual with the same education, age, and past work as Plaintiff could perform any jobs if limited to light work, lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing and walking for 6 hours in an 8-hour workday; with a sit/stand option every 30 minutes; not required to engage in climbing and limited to occasional balancing, stooping, kneeling, crouching, crawling; no concentrated exposure to vibrations, moving mechanical parts or work at unprotected heights; and limited to performing simple, repetitive, non-detailed tasks where coworker and public contact is casual, infrequent and supervision is direct and non-

confrontational and changes in the workplace are infrequent and gradually introduced. (Tr. 44). The VE opined this individual could not perform any of Plaintiff's past work but could work as a marker (4,900 jobs in Tennessee, 215,300 nationwide), as a textile worker (3,000 jobs in Tennessee, 86,700 nationwide), or as a sorter (3,200 jobs in Tennessee, 128,400 nationwide). (Tr. 44-45).

The ALJ then asked if the same hypothetical individual could perform those jobs if limited to standing and walking 2 hours, limited to occasional fingering, and with no public contact. (Tr. 45). The VE stated it did not change her answer to the first hypothetical. If the individual was absent for more than 2 days per month or needed additional breaks, he would be unemployable. (Tr. 46-47).

### III. PLAINTIFF'S STATEMENT OF ERROR AND CONCLUSIONS OF LAW

In his Motion, Plaintiff alleges two errors. First, the ALJ failed to fully and fairly develop the record. Second, the ALJ erred by not following the legal standards in 20 CFR § 1520(a) in rating Plaintiff's degree of medical impairments. For the reasons set forth below, the Magistrate Judge believes the ALJ had substantial evidence for his decision.

A.  <u>Standard of Review</u>

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept

as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.    Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

> light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> 5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *See Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.*; *see also Moon*, 923 F.2d at 1181. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through VE testimony. *See Wright*, 321 F.3d at *616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); *see also Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

C.  The ALJ Was Not Required to Order a Consultative Examination or Retain a Medical Expert to Testify

Plaintiff first argues that the ALJ failed to develop the record by failing to either call a medical expert to testify or order a consultative examination. As an initial matter, it is clear that

Plaintiff has the ultimate burden of presenting evidence of disability. *See* 42 U.S.C. § 423(d)(5)(A). Here, Plaintiff presented only a handful of medical records as evidence of his impairments. "The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). While the ALJ *may* order a consultative exam, he is not required to do so "unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Id*. *See also* 20 CFR § 416.917(a).

The Magistrate Judge believes no such examination was necessary here. Two consultative physicians examined Plaintiff's scarce medical records, and one even spoke to him by telephone to question a new allegation of vision impairment. Moreover, Plaintiff was represented by counsel at his hearing and still failed to adequately develop the record. Because it is ultimately the Plaintiff's burden to prove he is disable, the Magistrate Judge believes the ALJ had substantial evidence for his decision.

D.  The ALJ Properly Evaluated Plaintiff's Alleged Mental Impairments

Plaintiff argues the ALJ failed to follow the requirements of 20 C.F.R § 404.1520(a) in evaluated the degree of Plaintiff's alleged mental impairments. When a claimant alleges disabling mental impairment, an ALJ is required to evaluate first whether the claimant has a "medically determinable mental impairment" and then to rate the "degree of functional limitation resulting from the impairment." 20 C.F.R. § 404.1520a. The ALJ must evaluate the so-called "A" criteria, consisting of the "symptoms, signs, and laboratory findings" of the claimant's alleged medically determinable mental impairment. *Id.* The ALJ must also evaluate the "B" criteria, which rate the

9

claimant's degree of functional limitation and consist of four functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* The ALJ's application of these criteria must be documented in his decision. *Id.*

Here, the ALJ determined that Plaintiff did not have a severe impairment, as he produced no medical evidence of his depression. While the ALJ did not explicitly document this conclusion, it is evident from his opinion describing the medical records and RFC. (Tr. 19-22). Although Plaintiff testified he had been receiving treatment at the Hope Clinic for his depression for about a year, there was no medical evidence submitted reflecting this. In light of this "paucity of medical evidence" and Plaintiff's stated daily activities, the ALJ determined Plaintiff's RFC would allow for work in significant numbers in the local and national economy. (Tr. 19-23). The Magistrate Judge believes this decision was supported by substantial evidence.

## IV. RECOMMENDATION

For the reasons set forth above, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **DENIED** and this action be **DISMISSED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 11th day of May, 2012.


/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge